IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANJANETTE YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No.: 19-cv-05312 |
| | ) | |
| THE CITY OF CHICAGO; CHICAGO | ) | |
| POLICE OFFICERS ALAIN APORONGAO; | ) | |
| ALEX J. WOLINSKI; and UNKNOWN | ) | **Jury Trial Demanded** |
| CHICAGO POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

**NOW COMES** Plaintiff, ANJANETTE YOUNG ("Plaintiff") by and through her attorney Keenan J. Saulter, of Saulter Law P.C., and for her Complaint against Defendants THE CITY OF CHICAGO, CHICAGO POLICE OFFICER ALAIN APORONGAO, CHICAGO POLICE OFFICER ALEX J. WOLINKSI and several UNKNOWN CHICAGO POLICE OFFICERS pursuant to 42 U.S.C. § 1983, states as follows:

## OVERVIEW

1.      This action arises out of an incident that occurred at Plaintiff's home located at 164 N. Hermitage Avenue, Chicago, Cook County, Illinois 60612 on February 21, 2019.

2.     As a result of this incident, Plaintiff ANJANETTE YOUNG, was emotionally scarred and traumatized as Chicago Police Officers unlawfully raided her home.

3.     Plaintiff was handcuffed while completely naked by several male Police Officers employed by the Defendant THE CITY OF CHICAGO.

## PLAINTIFF

4.     Plaintiff ANJANETTE YOUNG is a resident of the Northern District of Illinois, Eastern Division at the time of the incident (and remains a resident here as of the filing of this action).

## DEFENDANT

5.     Defendant THE CITY OF CHICAGO, is a Municipal Corporation under the laws of the State of Illinois.

6.     Defendant Chicago Police Officers ALAIN APORONGAO; ALEX J. WOLINSKI; and Defendants UNKNOWN CHICAGO POLICE OFFICERS are employees of the Chicago Police Department (hereinafter referred to as "Defendant Chicago Police Officers").

## JURISDICTION AND VENUE

7.     This action arises under 42 U.S.C. §1983. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. The Court has supplemental jurisdiction of Plaintiffs' state law claims.

8.     Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the Defendants

are subject to personal jurisdiction in this judicial district and all of the events that give rise to the case occurred in this judicial district.

## *RESPONDEAT SUPERIOR* – STATE LAW

9. In committing the acts and omissions alleged above, Defendant Chicago Police Officers were at all times relevant members and agents of the Chicago Police Department (the "CPD") and THE CITY OF CHICAGO and were acting within the scope of their employment.

10. Defendant CITY OF CHICAGO is, therefore, liable as principal for all common law torts committed by its agents within the scope of their employment.

## INDEMNIFICATION – STATE LAW

11. Pursuant to Illinois law, 745 ILCS 10/9-102, requires public entities to pay any common law tort judgment for compensatory damages for which employees are held liable within the scope of their employment activities.

12. The Defendant Chicago Police Officers that illegally searched Plaintiff were at all times relevant employees of THE CITY OF CHICAGO who acted within the scope of their employment when committing the actions and omissions detailed herein.

## FACTS COMMON TO ALL COUNTS

13. On or about February 21, 2019, Plaintiff ANJANETTE YOUNG resided at her home located at 164 N. Hermitage Avenue, Chicago, Illinois 60612 where she had lived for approximately four years.

14.     On or about February 21, 2019, at approximately 7:00 p.m., Plaintiff ANJANETTE YOUNG (hereinafter referred to as "Plaintiff") was in her bedroom, in the process of preparing for bed when she heard loud knocking at her front door.

15.     Plaintiff was attempting to find clothing (to respond to the knocking) and was completely naked when Defendant Chicago Police Officers broke her front door and burst in her home without her authorization.

16.     Plaintiff, at this point shocked immediately tried to grab a jacket to cover herself but was ordered by the Defendant Chicago Police Officers to put her hands up while they pointed guns at her.

17.     Plaintiff then asked the Defendant Chicago Police Officers why they had burst into her home and she asked them who they were looking for.

18.     Plaintiff repeatedly pleaded with the Defendant Chicago Police Officers and advised them that they had the wrong house.

19.     Plaintiff continued to reiterate to the Defendant Police Officers that she lived alone.

20.     Plaintiff was put in handcuffs while completely naked by the Defendant Chicago Police Officers, all of whom were male.

21.     Plaintiff repeatedly begged the Officers to put clothing on, but she was ignored by the Defendant Chicago Police Officers.

22.     Plaintiff repeatedly asked to see the search warrant but was told by Defendant Chicago Police Officer ALEX J. WOLINKSI that they would show it to

her "in a minute" and to told her to "calm down" while she was handcuffed, completely naked in a room full of strange men.

23.     Plaintiff was hysterical and crying because she feared for her life.

24.     Prior to being accosted by the Defendant Police Officers, Plaintiff had never had a gun pointed at her in her entire life.

25.     Plaintiff was violated, demoralized and disrespected as the Defendant Chicago Police Officers continued to search her home and throw her personal belongings around.

26.     Plaintiff asked several times if she could put clothing on since she was still handcuffed and completely naked.

27.     After an extended period of time, one of the Defendant Chicago Police Officer grabbed a blanket and attempted to cover Plaintiff, however this covering was quite inadequate, and her body was still exposed.

28.     Finally, after forty-five minutes to an hour, a Unknown (female) Chicago Police Officer was called to Plaintiff's home, to help the Plaintiff find clothing and get dressed.

29.     The Defendant Unknown (female) Chicago Police Officer took Plaintiff into her bedroom and removed the handcuffs.

30.     The Defendant Unknown (female) Chicago Police Officer then turned off her bodycam so Plaintiff could get dressed.

31.     Once Plaintiff was dressed, she was again placed back into handcuffs.

32.    Plaintiff again pleaded with the Defendant Chicago Police Officers regarding the purpose for their invasion into her home.

33.    Finally, after at least an hour in her home, Defendant Chicago Police Officer ALEX J. WOLINKSI, told Plaintiff that the Defendant Chicago Police Officers were looking for an individual and needed to identify whether anything in her home belonged to him.

34.    Defendant Chicago Police Officer ALEX J. WOLINKSI finally showed Plaintiff the Search Warrant and informed her "they had good intel about the suspect being there".

35.    Plaintiff was made to wait for more than an hour after the Defendant Chicago Police Officers burst into her home to be shown the Search Warrant.

36.    Plaintiff advised the Defendant Chicago Police Officers that she had lived in the same residence, alone, for the last four years.

37.    Defendant Chicago Police Officer ALAIN APORONGAO was assigned to the search team.

38.    Defendant APORONGAO was the affiant of the Complaint for Search Warrant that was used as the pretext to violate Plaintiff's constitutional rights.

39.    When Defendant Chicago Police Officers executed the search warrant at 164 N. Hermitage Avenue, in Chicago, Illinois, on February 21, 2019, they were at all times acting under color of law and within the scope of their employment as officers of the CPD for the Defendant City of Chicago.

40.     At approximately 10:00 a.m. on February 21, 2019, Defendant Police Officer APORONGAO swore out and obtained a search warrant authorizing a search of "*ANDY L. SIMPSON*" and the premises at "164 N. Hermitage Ave., 1st Floor Apartment, Chicago, Cook County, Illinois."

41.     The warrant also authorized the seizure of a black semi-automatic handgun, ammunition, any articles or documents establishing residency, any locked containers and any other illegal contraband.

42.     The complaint for the search warrant inaccurately stated, based on information from a *J. Doe confidential informant*, that **Mr. Simpson** resided in the 1st Floor Apartment at 164 N. Hermitage Avenue.

43.     In fact, on February 21, 2019, **Mr. Simpson** did not reside at 164 N. Hermitage Avenue and had not lived there for several years.

44.     As previously stated, Plaintiff had occupied that residence for the last four years prior to the incident.

45.     Mr. Simpson had no connection to 164 N. Hermitage Avenue for several years.

46.     As of the date of the incident (and since the incident) Simpson did not receive mail nor store belongings at Plaintiff's home.

47.     Simpson doesn't have a key to Plaintiff's home.

48.     In fact, until the night that she was accosted by the Defendant Chicago Police Officers, Plaintiff had never heard of Simpson.

49.     The Defendant Chicago Police Officers used the address given to them by the J. Doe informant, without properly verifying this address through various available resources.

50.     The facts that a Chicago police officer alleges in a complaint for a search warrant are required to be "credible and reliable." (CPD SO4-19, VI.B.a.).

51.     To this end, a Chicago police officer swearing out a search warrant under oath before a judge is required to "thoroughly conduct the investigation leading up to the need for a search warrant." (CPD SO4-19).

52.     Crucially, the affiant of a complaint for search warrant is required to independently investigate and verify the information provided by a John or Jane Doe confidential informant, including information about where the intended target resided.

53.     In other words, as the sworn applicant for the warrant, Defendant Chicago Police Officer APORONGAO had a duty to discover, diligently and in good faith, and disclose to the issuing warrant judge whether he had identified the correct apartment or place to be searched and not the residence of an innocent third party.

54.     In direct violation of CPD policy, Defendant Chicago Police Officers involving in obtaining or approving the search warrant for 164 N. Hermitage Avenue performed no independent investigation or surveillance to verify that the "J. Doe" confidential informant had provided current or accurate information regarding where Mr. Simpson resided or could be found.

55. The Defendant Chicago Police Officers could have made several simple inquiries to verify the information they had allegedly been provided by their confidential source, *via* multiple avenues.

56. They could have contacted the building's owner.

57. They could have contacted a utility company supplying energy to the building.

58. They could have utilized CPD's database, Accurint, which assists officers in identifying persons residing at a given address.

59. They could have run a person search on LexisNexis, using Mr. Simpsons' date of birth and last known address.

60. However, the Defendant Chicago Police Officers failed to conduct any investigation or verification, as required by SO4-19.

61. They simply trusted what the "J. Doe" told them about where Simpson lived.

62. Consequently, in his complaint for search warrant, Defendant Chicago Police Officer APORONGAO provided the court with an incorrect or obsolete address, 164 N. Hermitage Avenue.

63. The Defendant Chicago Police Officers did not have probable cause to believe that Simpson lived there and, therefore, lacked probable cause to enter and conduct a search at that address (Plaintiff's home).

64.     The Defendant Chicago Police Officers failed in their duty to independently investigate and verify with particularity the place to be searched, theirs was not a good faith error.

65.     Similarly, Defendant Chicago Police Officer WOLINSKI simply gave rubberstamp approval to APORONGAO'S pitiful application for the search warrant, without taking any steps to ensure that APORONGAO and other Defendant Chicago Police Officers had performed their due diligence required by CPD Special Order SO4-19. Taking such vital steps was something he was required to do.

66.     On February 21, 2019, Defendant Chicago Police Officers reasonably knew or should have known that the intended target of warrant did not reside at 164 N. Hermitage Avenue.

67.     The Defendant Chicago Police Officers had barged in while Plaintiff was in her bedroom. Plaintiff was startled and ran out into the living room to see what was going on. Plaintiff did not have any clothes on when the officers barged in. Plaintiff tried to grab a jacket by a chair (to put it around her) but instead, she was faced with several Unknown (male) Defendant Chicago Police Officers pointing guns at her ordering her to put her hands up.

68.     During this illegal search and seizure, the Defendant Chicago Police Officers ransacking her home while she stood there crying hysterically, handcuffed and naked.

69. Eventually, Defendant Chicago Police Officer WOLINSKI removed the handcuffs from Plaintiff and apologized to her (i.e. admitted liability), but continued to maintain that they had "good" intel—which was clearly untrue.

## COUNT I – UNLAWFUL SEARCH AND SEIZURE
## FOURTH AMENDMENT VIOLATION

70. Plaintiff re-alleges paragraphs 1 through 69 above and incorporate them into this count by reference.

71. The Defendant Chicago Police Officers unreasonably approved and/or obtained a search warrant for 164 N. Hermitage Avenue, the wrong address for Andy L. Simpson, a fact which invalidated the warrant from the start, prior to execution.

72. Defendant Chicago Police Officers' subsequent unauthorized entry and search violated Plaintiff's Fourth Amendment Right to be free from unreasonable searches of their persons or homes.

73. The Defendant Chicago Police Officers seizure of Plaintiff (i.e. placing her naked in handcuffs for nearly an hour) violated Plaintiff's Fourth Amendment Right against an unlawful seizure.

74. Moreover, Defendant Chicago Police Officers failed to "knock-and-announce" in circumstances where it was required.

75. As the sworn applicant for the warrant, Defendant Chicago Police Officer APORONGAO had a duty to discover and disclose to the issuing magistrate whether he had identified the correct address or place to be searched and not the residence of an innocent third party.

76. Defendant Chicago Police Officer APORONGAO and the officers named in this count reasonably knew or should have known that the intended target(s) of the warrant did not reside at 164 N. Hermitage Avenue, 1st Floor Apartment, and that Plaintiff did.

77. Defendant Chicago Police Officer APORONGAO and the other officers had a duty to reasonably investigate and verify information they received from J. Doe about where Mr. Simpson resided.

78. Defendant Chicago Police Officers' conduct under this count merits an award of punitive damages to Plaintiff. Defendant Chicago Police Officers' shocking inaction in failing to perform required and basic reasonable due diligence to verify the correct location for a search warrant before raiding and searching citizens' residence constituted an abuse of power and authority. Defendant Chicago Police Officers' actions – of relying solely on location information provided by a J. Doe confidential information – were directed towards at an honest, hard-working citizen who was totally innocent of all criminal conduct.

79. Defendant Chicago Police Officers' conduct toward Plaintiff was undertaken with willful and wanton disregard for the rights of others. Defendant Chicago Police Officers acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of Plaintiff was involved. Defendant Chicago Police Officers acted with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard for the rights of others.

80.     In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants' conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

**WHEREFORE** the plaintiffs pray this court for damages according to proof and for such other and further relief as this Court deems just.

## COUNT II – FALSE IMPRISONMENT – STATE LAW

81.     Plaintiff realleges paragraphs 1 through 80 above and incorporate them into this count by reference.

82.     The manner in which the Defendant Chicago Police Officers conducted their entry into, and search of Plaintiffs' apartment were objectively unreasonable, in violation of her rights.

83.     When the Defendant Chicago Police Officers entered Plaintiffs' home, kicked down her door, barged in, they handcuffed Plaintiff while she was naked and refused to let her put clothes on to cover herself—when did not pose a threat and who did not in any way resemble the target described in the search warrant, they placed her under arrest.

84.     This arrest was unlawful and without legal cause or justification.

85.     The Defendant Chicago Police Officers acted without having reasonable grounds to believe that an offense was committed by the Plaintiff.

86.     Plaintiff had her personal liberty or freedom of locomotion unlawfully restrained.

87. As a direct and proximate result of one or more of the foregoing acts and/or omissions of the Defendant Chicago Police Officers, the Plaintiff suffered damages.

88. The Defendant Chicago Police Officers' conduct toward Plaintiff was undertaken with willful and wanton disregard for the rights of others.

89. The Defendant Chicago Police Officers acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of Plaintiff was involved.

90. The Defendant Chicago Police Officers acted with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard for the rights of others.

91. In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants' conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

## COUNT III – ASSAULT – STATE LAW

92. Plaintiff re-alleges paragraphs 1 through 91 above and incorporates them into this count by reference.

93. The actions of Defendant Chicago Police Officers set forth above, including pointing a gun at close range, created reasonable apprehension in Plaintiff of immediate harmful contact to Plaintiff's person by the Defendants.

94.     The Defendant Chicago Police Officers intended to bring about apprehension of immediate harmful contact in Plaintiff or knew that their actions would bring about such apprehension.

95.     In the alternative, the conduct of Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

96.     The conduct of Defendant Chicago Police Officer's in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

97.     The Defendant Chicago Police Officers' actions were the direct and proximate cause of Plaintiff's apprehension.

98.     Plaintiff has been seriously harmed by Defendant Chicago Police Officers' actions.

99.     In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants' conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

## COUNT IV – BATTERY – STATE LAW

100.   Plaintiff re-alleges paragraphs 1 through 99 and incorporates them into this count by reference.

101.   The actions of Defendant Chicago Police Officers set forth above, including handcuffing Plaintiff and parading her through her home by force while completely naked constituted an unwarranted physical touching.

102.   The Defendant Chicago Police Officers intentionally took these actions.

103.   In the alternative, the conduct of Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of Plaintiff.

104.   Plaintiff has been seriously harmed by Defendant Chicago Police Officers' actions.

105.   In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants' conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

## COUNT V – INVASION OF PRIVACY -STATE LAW

106.   Plaintiff re-alleges paragraphs 1 through 105 and incorporates them into this count by reference.

107.   By obtaining and executing the search warrant when Defendant Chicago Police Officers did not have probable cause to believe that the target

resided at the address given them by the J. Doe, Defendant Chicago Police Officers physically invaded Plaintiff's right to and enjoyment of exclusive possession of her residence.

108.    In the alternative, the conduct of the Defendant Chicago Police Officers willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for Plaintiff's right to and enjoyment of exclusive possession of her residence.

109.    This is particularly true, because when the aforementioned actions were taken by the Defendant Chicago Police Officers, Plaintiff was completely naked and preparing for bed.

110.    Notwithstanding this, Plaintiff was forced to stand naked in front of several strange men, who entered her home without legal justification in a forceful manner (i.e. they broke her front door).

111.    Defendant Chicago Police Officers' actions caused a physical invasion of Plaintiff's residence.

112.    Plaintiff was harmed by Defendant Chicago Police Officers' physical invasion of her residence.

## COUNT VI – TRESPASS -STATE LAW

113.    Plaintiff re-alleges paragraphs 1 through 112 and incorporates them into this count by reference.

114.    By obtaining and executing the search warrant when Defendant Chicago Police Officers did not have probable cause to believe that the target resided at the address given them by the J. Doe, Defendant Chicago Police Officers and then executing that search warrant—the Defendant Chicago Police Officers entered Plaintiff's home unlawfully and without being otherwise invited therein by Plaintiff.

115.    In the alternative, the conduct of the Defendant Chicago Police Officers willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for Plaintiff's right to and enjoyment of exclusive possession of her residence.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – STATE LAW

116.    Plaintiff re-alleges paragraphs 1 through 115 and incorporates them into this count by reference.

117.    The actions, omissions and conduct of the Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

118.    The Defendant Chicago Police Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to Plaintiff, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress.

119.    The Defendant Chicago Police Officers, who occupied positions of special trust and authority, knew, had reason to know or believe that Plaintiff, was especially vulnerable and fragile.

120.    As a direct and proximate result of the Defendant Chicago Police Officers' extreme and outrageous conduct, Plaintiff suffered and continues to suffer long-term, severe emotional distress and trauma.

## COUNT VIII – NEGLIGENT (RECKLESS) INFLICTION OF EMOTIONAL DISTRESS – STATE LAW

121.    Plaintiff re-alleges paragraphs 1 through 120 and incorporates them into this count by reference.

122.    The actions, omissions and conduct of the Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

123.    The conduct of the Defendant Chicago Police Officers showed an utter indifference to or conscious disregard for the safety of others and/or their property.

124.    The conduct of the Defendant Chicago Police Officers in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. The Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

125.    The Defendant Chicago Police Officers' actions was a proximate cause of Plaintiffs' injuries and her extreme, severe, long-term emotional distress and trauma.

126.    In the alternative, the Defendant Chicago Police Officers owed Plaintiff a duty of care that they breached when they pointed guns at her. Plaintiff is a direct victim of Defendant Chicago Police Officers' negligent (reckless) infliction of emotional distress.

127.    Furthermore, the conduct of the Defendant Chicago Police Officers showed an utter indifference to or conscious disregard for the safety of others and/or her property.

128.    Defendant Chicago Police Officers' actions was a proximate cause of Plaintiffs' injuries and her extreme, severe, long-term emotional distress and trauma.

## PRAYER FOR RELIEF (ALL COUNTS)

**WHEREFORE,** Plaintiff respectfully request that the Court enter judgment

in their favor and against the Defendants on each count for:

    a)  Compensatory damages;

    b)  Punitive damages;

    c)  Reasonable attorney's fees and litigation costs and expenses; and

    d)  Such other or further relief as the Court deems just and proper.


                                             _____

                                                  Keenan J. Saulter

                                                  Counsel for Plaintiff


Keenan J. Saulter
**Saulter Law P.C.**
900 Ridge Road, Suite 200
Homewood, Illinois 60430
708.573.0060 Telephone
708.573.0061 Facsimile
kjs@saulterlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANJANETTE YOUNG,                          )
                                          )
            Plaintiff,                    )
                                          )
      -vs-                                )      Case No.: 19-cv-05312
                                          )
THE CITY OF CHICAGO; CHICAGO              )
POLICE OFFICERS ALAIN APORONGAO;         )
ALEX J. WOLINSKI; and UNKNOWN            )      **Jury Trial Demanded**
CHICAGO POLICE OFFICERS,                  )
                                          )
            Defendants.                   )

## JURY DEMAND

Plaintiff demands trial by jury.

_____
Keenan J. Saulter

Keenan J. Saulter
**Saulter Law P.C.**
900 Ridge Road, Suite 200
Homewood, Illinois 60430
708.573.0060 Telephone
708.573.0061 Facsimile
kjs@saulterlaw.com