IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANJANETTE YOUNG,                                          )
                                                         )
       Plaintiff,                                    )
                                                         )
     -vs-                                            )    Case No.: 19-cv-05312
                                                         )
THE CITY OF CHICAGO; CHICAGO POLICE                      )
OFFICERS ALAIN APORONGAO, STAR NO.                       )
4870; ALEX WOLINSKI, STAR NO. 2605;                      )    **Jury Trial Demanded**
BRYAN MORDAN, STAR NO. 11437;                            )
GABRIEL CRUZ, STAR NO. 2844; MICHAEL ORTA,               )
STAR NO. 11485; JOSEPH LISCIANDRELLO;                    )
STAR NO. 19362; MICHAEL DONNELLY,                        )
STAR NO. 13784; TITO JIMENEZ; STAR NO. 14955;            )
FILIP BIENIASZ, STAR NO. 15454; NIKOLA SARIC,            )
STAR NO. 18200; CODY MALONEY, STAR NO. 13032;            )
 ERIC ACEVEDO, STAR NO. 13560;                           )
OFFICER FRENCH,STAR NO. 15013; OFFICER VILLA,            )
STAR NO. 14319,                                          )
                                                         )
       Defendants.                                   )

## FIRST AMENDED COMPLAINT AT LAW

**NOW COMES** Plaintiff, ANJANETTE YOUNG ("Plaintiff") by and through

her attorney Keenan J. Saulter, of Saulter Law P.C., and for her Complaint against

Defendants THE CITY OF CHICAGO, and CHICAGO POLICE OFFICERS ALAIN

APORONGAO, STAR NO. 4870; ALEX WOLINSKI, STAR NO. 2605; BRYAN

MORDAN, STAR NO. 11437; GABRIEL CRUZ, STAR NO. 2844; MICHAEL ORTA,

STAR NO. 11485; JOSEPH LISCIANDRELLO; STAR NO. 19362; MICHAEL DONNELLY,

STAR NO. 13784; TITO JIMENEZ; STAR NO. 14955; FILIP BIENIASZ, STAR NO. 15454;

NIKOLA SARIC, STAR NO. 18200; CODY MALONEY, STAR NO. 13032; ERIC

ACEVEDO, STAR NO. 13560; OFFICER FRENCH, STAR NO. 15013; OFFICER VILLA, STAR NO. 14319, pursuant to 42 U.S.C. § 1983, states as follows:

## OVERVIEW

1. This action arises out of an incident that occurred at Plaintiff's home located at 164 N. Hermitage Avenue, Chicago, Cook County, Illinois 60612 on February 21, 2019.

2. As a result of this incident, Plaintiff ANJANETTE YOUNG, was emotionally scarred and traumatized as Chicago Police Officers unlawfully raided her home.

3. Plaintiff was hand cuffed while completely naked by several male Chicago Police Officers employed by Defendant THE CITY OF CHICAGO.

## PLAINTIFF

4. Plaintiff ANJANETTE YOUNG was a resident of the Northern District of Illinois, Eastern Division at the time of the incident (and remains a resident here as of the filing of this action).

## DEFENDANTS

5. Defendant THE CITY OF CHICAGO, is a Municipal Corporation, organization pursuant to the laws of the State of Illinois.

6. Defendant Chicago Police Officers ALAIN APORONGAO, STAR NO. 4870; ALEX WOLINSKI, STAR NO. 2605; BRYAN MORDAN, STAR NO. 11437; GABRIEL CRUZ, STAR NO. 2844; MICHAEL ORTA, STAR NO. 11485; JOSEPH LISCIANDRELLO; STAR NO. 19362; MICHAEL DONNELLY, STAR NO. 13784; TITO

JIMENEZ; STAR NO. 14955; FILIP BIENIASZ, STAR NO. 15454; NIKOLA SARIC, STAR NO. 18200; CODY MALONEY, STAR NO. 13032; ERIC ACEVEDO, STAR NO. 13560; OFFICER FRENCH, STAR NO. 15013; OFFICER VILLA, STAR NO. 14319 are employees of the Chicago Police Department (hereinafter referred to as "Defendant Chicago Police Officers"). Each of the Defendant Chicago Police Officers referenced herein were working as employees and agents, under the color of law at all times complained of in this First Amended Complaint.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction of Plaintiffs' state law claims.

8. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the Defendants are subject to personal jurisdiction in this judicial district and all of the events that give rise to the case occurred in this judicial district.

## *RESPONDEAT SUPERIOR* – STATE LAW

9. In committing the acts and omissions alleged above, Defendant Chicago Police Officers were at all times members and agents of CPD and THE CITY OF CHICAGO and were acting within the scope of their employment.

10. Defendant CITY OF CHICAGO is, therefore, liable as principal for all common law torts committed by its agents within the scope of their employment.

## INDEMNIFICATION – STATE LAW

11.    Illinois law, 745 ILCS 10/9-102, directs public entities to pay any common law tort judgment for compensatory damages for which employees are held liable within the scope of their employment activities.

12.    Involved Defendant Chicago Police Officers were and are employees of THE CITY OF CHICAGO who acted within the scope of their employment when committing the actions and omissions detailed below.

## FACTS COMMON TO ALL COUNTS

13.    On February 21, 2019, Plaintiff ANJANETTE YOUNG resided at her home located at 164 N. Hermitage Avenue, Chicago, Illinois 60612.

14.    On February 21, 2019, at approximately 7:00 p.m., Plaintiff ANJANETTE YOUNG (hereinafter referred to as "Plaintiff") was in her bedroom, in the process of preparing for bed when she heard a knock at her front door.

15.    Plaintiff was attempting to find clothing and was completely naked when Defendant Chicago Police Officers burst in her home without authorization.

16.    Plaintiff tried to quickly grab a jacket to cover herself but was ordered by Defendant Chicago Police Officers to put her hands up while they pointed guns at her.

17.    At the time of all relevant events, Plaintiff repeatedly asked the Defendant Chicago Police Officers why they had burst into her home; asked them who they were looking for and repeatedly told them they had the wrong house.

18.     Plaintiff repeatedly reiterated that she lived alone.

4

19.     Plaintiff was put in handcuffs while completely naked by the Defendant Chicago Police Officers, all of whom were male.

20.     Plaintiff repeatedly asked if she could put clothing on but was ignored by the Defendant Chicago Police Officers.

21.     Plaintiff repeatedly asked to see the search warrant but was told by Defendant Chicago Police Officer ALEX J. WOLINKSI that she could see it "in a minute" and was ordered to "calm down" even though the Defendant Chicago Police Officers had burst into her home without authorization, forced her to stand completely naked before them, and while they threatened her life with their service weapon.

22.     Plaintiff was hysterical and crying because she feared for her life.

23.     Prior to this incident, Plaintiff had never had a gun pointed at her in her entire life.

24.     Plaintiff was violated, demoralized and disrespected as Defendant Chicago Police Officers continued to search her home and throw her personal belongings around as she stood there naked and handcuffed.

25.     Plaintiff asked several times if she could put clothing on since she was still handcuffed and completely naked in front of a room full of strange men.

26.     Eventually, after approximately forty-five minutes, a female Chicago Police Officer was called to the scene and assisted Plaintiff.

27.     The unknown female Chicago Police Officer walked Plaintiff into her bedroom and removed the handcuffs. The female Chicago Police Officer then turned off her bodycam so Plaintiff could get dressed.

28.     Once Plaintiff was dressed, she was again placed back into handcuffs.

29.     Plaintiff asked Defendant Chicago Police Officer ALEX J. WOLINKSI, what they were looking for and he explained they are looking for an individual and they needed to identify whether anything in her home belonged to him. This was after the Defendant Police Officers had been in her home for nearly an hour.

30.     At that point, Defendant Chicago Police Officer ALEX J. WOLINKSI finally showed Plaintiff the Search Warrant and informed her "they had good intel about the suspect being there".

31.     Plaintiff was made to wait nearly an hour after the Defendant Chicago Police Officers burst into her home to show her the Search Warrant.

32.     During this time, Plaintiff had repeatedly explained that she has lived in the same residence, alone, for the last four years.

33.     Defendant Chicago Police Officer ALAIN APORONGAO was assigned to the search team. He was the affiant of the Complaint for Search Warrant that was presented to the Judge.

34.     When Defendant Chicago Police Officers executed the search warrant at 164 N. Hermitage Avenue, in Chicago, Illinois, on February 21, 2019, they were at all times acting under color of law and within the scope of their employment as officers of the Chicago Police Department ("CPD") for the City of Chicago.

35.     At approximately 10:00 a.m. on February 21, 2019, Defendant Chicago Police Officer APORONGAO swore out and obtained a search warrant authorizing a search of "Andy L. Simpson" and the premises at "164 N. Hermitage Ave., 1st Floor Apartment, Chicago, Cook County, Illinois."

36.     The warrant also authorized the seizure of a black semi-automatic handgun, ammunition, any articles or documents establishing residency, any locked containers and any other illegal contraband.

37.     The complaint for the search warrant inaccurately stated, based on information from a J. Doe confidential informant, that Mr. Simpson resided in the 1st Floor Apartment at 164 N. Hermitage Avenue.

38.     In fact, on February 21, 2019, Mr. Simpson did not reside at 164 N. Hermitage Avenue and had not lived there for several years.

39.     The Plaintiff has occupied that residence for the last four years prior to the incident.

40.     Mr. Simpson had no connection to 164 N. Hermitage Avenue for several years. He does not receive mail or store belongings there. He does not have a key. Plaintiff does not know who this person is.

41.     The Defendant Chicago Police Officers used the address given to them by the J. Doe informant, without properly verifying this address through other sources.

42.     The facts that a Chicago police officer alleges in a complaint for a search warrant are required to be "credible and reliable." (CPD SO4-19, VI.B.a.).

7

43.     To this end, a Chicago police officer swearing out a search warrant under oath before a judge is required to "thoroughly conduct the investigation leading up to the need for a search warrant." (CPD SO4-19).

44.     Crucially, the affiant of a complaint for search warrant is required to independently investigate and verify the information provided by a John or Jane Doe confidential informant, including information about where the intended target resided.

45.     In other words, as the sworn applicant for the warrant, Defendant Chicago Police Officer APORONGAO had a duty to discover, diligently and in good faith, and disclose to the issuing warrant judge whether he had identified the correct apartment or place to be searched and not the residence of an innocent third party.

46.     In direct violation of CPD policy, the Defendant Chicago Police Officers involved in obtaining or approving the search warrant for 164 N. Hermitage Avenue performed no independent investigation or surveillance to verify that the "J. Doe" confidential informant had provided current or accurate information regarding where Mr. Simpson resided or could be found.

47.     The Defendant Chicago Police Officers could have made a number of simple inquiries, they had multiple sources of information available to them.

48.     They could have contacted the building's owner. They could have contacted a utility company supplying energy to the building. They could have utilized CPD's database, Accurint, which assists officers in identifying persons

8

residing at a given address. They could have run a person search on LexisNexis, using Mr. Simpsons' date of birth and last known address.

49. However, the Defendant Chicago Police Officers failed to conduct any investigation or verification, as required by SO4-19. They simply trusted what the "J. Doe" told them about where Simpson lived.

50. Consequently, in his complaint for search warrant, Defendant Chicago Police Officer APORONGAO provided the court with an incorrect or obsolete address, 164 N. Hermitage Avenue.

51. The Defendant Chicago Police Officers did not have probable cause to believe that Simpson lived at the Plaintiff's house and, therefore, to enter and conduct a search at that address.

52. The Defendant Chicago Police Officers failed in their duty to independently investigate and verify the particular place to be searched, theirs was not a good faith error.

53. Similarly, Defendant Chicago Police Officer WOLINSKI simply gave rubberstamp approval to APORONGAO'S application for the search warrant, without taking any steps to ensure that APORONGAO and other Defendant Chicago Police Officers had performed their due diligence required by CPD Special Order SO4-19. Taking such vital steps was something he was required to do.

54. On February 21, 2019, Defendant Chicago Police Officers reasonably knew or should have known that the intended target of warrant did not reside at 164 N. Hermitage Avenue.

55.     Defendant Chicago Police Officers had barged in while Plaintiff was in her bedroom. Plaintiff was startled and ran out into the living room to see what was going on. Plaintiff did not have any clothes on when the officers barged in. Plaintiff tried to grab a jacket by a chair (to put it around her) but instead, she was faced with several Unknown Defendant (male) Chicago Police Officers pointing a gun at her and to put her hands up.

56.     All the officers on the scene were male at this point (approximately the first forty-five minutes of the illegal raid).

57.     Plaintiff repeatedly told the Defendant Chicago Police Officers they had the wrong house. She told the Defendant Chicago Police Officers that she was the only person living in the home. The Defendant Chicago Police Officers turned on the lights and proceeded to place Plaintiff in handcuffs (while still completely naked in the clear eyesight of several Defendant (male) Chicago Police Officers).

58.     Plaintiff was hysterically crying and emotionally distraught and asking the Defendant Chicago Police Officers why they were in her home. Defendant Chicago Police Officer WOLINSKI kept telling her to calm down and that he would explain everything in a few minutes.

59.     Plaintiff asked to see a search warrant but was not provided with one. The Defendant Chicago Police Officers simply waved a piece of paper in Plaintiff's face without allowing her to read it.

60.     The Defendant Chicago Police Officers continued to search and destroy her home. Plaintiff (still completely naked) asked if she could put some clothes on because she was uncomfortable being naked.

61.     Plaintiff continued to reiterate to Defendant Chicago Police Officers that they had the wrong house, and no one had lived there but her for the last four years.

62.     Eventually, a female Chicago Police Officer was called to the scene and took Plaintiff into her bedroom and removed the handcuffs. The female Chicago Police Officer turned off her bodycam so Plaintiff can get dressed.

63.     Once Plaintiff was dressed, the handcuffs were placed back on her.

64.     The Defendant Chicago Police Officers were still walking around and ransacking her home. Plaintiff asked Defendant Chicago Police Officer WOLINSKI who they are looking for and told her they were looking for a person and need to identify if anything belonged to him.

65.     Defendant Chicago Police Officer WOLINSKI then shows Plaintiff the search warrant. He informs her they had "good" intel about the suspect being here.

66.     Plaintiff tells them well obviously it is "bad" intel since I have been living here, alone, for the last several years and does not know anyone by the name of Andy L. Simpson.

67.     Eventually, Defendant Chicago Police Officer WOLINSKI removed the handcuffs from Plaintiff and apologized to her but reiterated that they had "good" intel.

11

## COUNT I – UNLAWFUL SEARCH and SEIZURE
## FOURTH AMENDMENT VIOLATION

68.     Plaintiff re-alleges paragraphs 1 through 67 above and incorporate them into this count. Plaintiff asserts this claim against Defendant Chicago Police Officers and as yet Unknown Chicago Police Officers who participated in obtaining the search warrant for 164 N. Hermitage Avenue.

69.     Defendant Chicago Police Officers unreasonably approved and/or obtained a search warrant for 164 N. Hermitage Avenue, the wrong address for Andy L. Simpson, a fact which invalidated the warrant from the start, prior to execution.

70.     Defendant Chicago Police Officers' subsequent unauthorized entry and search violated Plaintiff's Fourth Amendment right to be free from unreasonable searches of their persons or homes.

71.     Moreover, Defendant Chicago Police Officers failed to "knock-and-announce" in circumstances where it was required.

72.     As the sworn applicant for the warrant, Defendant Chicago Police Officer APORONGAO had a duty to discover and disclose to the issuing magistrate whether he had identified the correct address or place to be searched and not the residence of an innocent third party.

73.     Defendant Chicago Police Officer APORONGAO and the officers named in this count reasonably knew or should have known that the intended target(s) of the warrant did not reside at 164 N. Hermitage Avenue, 1st Floor Apartment, and that Plaintiff did.

12

74. Defendant Chicago Police Officer APORONGAO and the other officers had a duty to reasonably investigate and verify information they received from J. Doe about where Mr. Simpson resided.

75. Such an inquiry was easy to make. Defendant Chicago Police Officers had multiple sources of information available to them at the time, had they bothered to use them. They could have contacted the building's owner. They could have contacted a utility company supplying energy to the building. They could have utilized CPD's own information sources, such as Accurint, which assists officers in identifying apartments and the persons residing in them. They could have conducted a LexisNexis search.

76. However, on information and belief, Defendant Chicago Police Officers did not conduct any investigation or verification or failed to conduct a reasonable one.

77. Consequently, in their complaint for a search warrant, Defendant Chicago Police Officers identified the wrong address, Plaintiff's address, a place they never had probable cause to enter and search. Because Defendant Chicago Police Officers utterly failed to independently investigate and verify the place to be searched, theirs was not a good faith error.

78. Defendant Chicago Police Officer WOLINSKI approved Defendant Chicago Police Officer APORONGAO's application for a search warrant without ensuring that Defendant Chicago Police Officers had performed the due diligence required by CPD Special Order S04-19.

79.     Defendant Chicago Police Officers' actions in these respects were objectively unreasonable and were undertaken intentionally, with malice and reckless indifference to Plaintiff's constitutional rights.

80.     As the direct and proximate result of Defendant Chicago Police Officers' misconduct, Plaintiff's suffered and continues to suffer injury and harm.

81.     Defendant Chicago Police Officers' conduct under this count merits an award of punitive damages to Plaintiff. Defendant Chicago Police Officers' shocking inaction in failing to perform required and basic reasonable due diligence to verify the correct location for a search warrant before raiding and searching citizens' residence constituted an abuse of power and authority. Defendant Chicago Police Officers' actions – of relying solely on location information provided by a J. Doe confidential information – were directed towards at an honest, hard-working citizen who was totally innocent of all criminal conduct.

82.     Defendant Chicago Police Officers' conduct toward Plaintiff was undertaken with willful and wanton disregard for the rights of others. Defendant Chicago Police Officers acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of Plaintiff was involved. Defendant Chicago Police Officers acted with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard for the rights of others.

83.     In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants'

conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

## COUNT II – FALSE IMPRISONMENT – STATE LAW

84.     Plaintiff realleges paragraphs 1 through 83 above and incorporate them into this count. Plaintiff asserts her claim against Defendant Chicago Police Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

85.     The manner in which Defendant Police Officers conducted their entry into and search of Plaintiffs' apartment were objectively unreasonable, in violation of Plaintiff's Fourth Amendment Rights.

86.     For example, when these Defendant Chicago Police Officers entered Plaintiffs' home, they did not knock or announce themselves or their office in circumstances where it was required, they kicked down Plaintiff's door and barged in, they handcuffed Plaintiff while she was naked and refused to let her put clothes on to cover herself, and they intentionally damaged or destroyed Plaintiffs' personal property.

87.     Further, it was unreasonable for Defendant Chicago Police Officers to selectively handcuff Plaintiff, who did not pose a threat and who did not in any way resemble the target described in the search warrant.

88.     Defendant Chicago Police Officers' manner of entry and search was objectively unreasonable in these and other ways and was undertaken intentionally, with malice and reckless indifference to Plaintiffs' constitutional rights.

89.     Under the circumstances, Defendant Chicago Police Officers had reasonable alternative law enforcement techniques available to them for effective entry and search.

90.     As the direct and proximate result of the Defendant Chicago Police Officers' misconduct, Plaintiff suffered and continues to suffer injury and harm.

91.     Defendant Chicago Police Officers' conduct under this count merits an award of punitive damages to Plaintiff. Defendant Chicago Police Officers' shocking inaction in failing to perform required and basic reasonable due diligence to verify the correct location for a search warrant before raiding and searching citizens' residence constituted an abuse of power and authority. Defendant Chicago Police Officers' actions – of relying solely on location information provided by a J. Doe confidential information – were directed towards at an honest, hard-working citizen who was totally innocent of all criminal conduct.

92.     Defendant Chicago Police Officers' conduct toward Plaintiff was undertaken with willful and wanton disregard for the rights of others. Defendant Chicago Police Officers acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of Plaintiff was involved. Defendant Chicago Police Officers acted with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard for the rights of others.

93.     In light of the character of Defendant Chicago Police Officers' actions toward Plaintiff and the lasting or permanent psychological injury that Defendants'

conduct has caused Plaintiff, defendants' conduct merits an award of punitive damages.

## COUNT III – FALSE ARREST – STATE LAW

94.     Plaintiff re-alleges paragraphs 1 through 93 above and incorporates them into this count. Plaintiff asserts her claim against Defendant Chicago Police officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

95.     The actions of Defendant Chicago Police Officers set forth above, including pointing a gun at close range, created reasonable apprehension in Plaintiff of immediate harmful contact to Plaintiff's person.

96.     The Defendant Chicago Police Officers intended to bring about apprehension of immediate harmful contact in Plaintiff or knew that their actions would bring about such apprehension.

97.     In the alternative, the conduct of Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

98.     The conduct of Defendant Chicago Police Officer's in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

99.     The Defendant Chicago Police Officers' actions were the direct and proximate cause of Plaintiff's apprehension.

100.    Plaintiff has been seriously harmed by Defendant Chicago Police Officers' actions.

## COUNT IV – ASSAULT – STATE LAW

101.    Plaintiff re-alleges paragraphs 1 through 100 and incorporates them into this count. Plaintiff asserts her claim against the Defendant Chicago Police Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

102.    The actions, omissions and conduct of Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

103.    Defendant Chicago Police Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to Plaintiff, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress.

104.    Defendant Chicago Police Officers, who occupied positions of special trust and authority, knew, had reason to know or believe that Plaintiff, was especially vulnerable and fragile.

105. As a direct and proximate result of Defendant Chicago Police Officers' extreme and outrageous conduct, Plaintiff suffered and continues to suffer long-term, severe emotional distress and trauma.

106. In the alternative, Defendant Chicago Police Officers owed Plaintiff a duty of care that they breached when they pointed guns at her. Plaintiff is a direct victim of Defendant Chicago Police Officers' negligent infliction of emotional distress.

107. Furthermore, the conduct of the Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

108. The conduct of Defendant Chicago Police Officers in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

109. Defendant Chicago Police Officers' actions was a proximate cause of Plaintiffs' injuries and her extreme, severe, long-term emotional distress and trauma.

## <u>COUNT V – INVASION OF PRIVACY -STATE LAW</u>

110. Plaintiff re-alleges paragraphs 1 through 109 and incorporates them into this count. Plaintiff asserts her claim against the Defendant Chicago Police

Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

111.    By obtaining and executing the search warrant when Defendant Chicago Police Officers did not have probable cause to believe that the target resided at the address given them by the J. Doe, Defendant Chicago Police Officers physically invaded Plaintiff's right to and enjoyment of exclusive possession of their residence.

112.    In the alternative, the conduct of the Defendant Chicago Police Officers willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

113.    The conduct of Defendant Chicago Police Officer's in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

114.    Defendant Chicago Police Officers' actions caused a physical invasion of Plaintiff's residence.

115.    Plaintiff was harmed by Defendant Chicago Police Officers' physical invasion of her residence.

## <u>COUNT VI – TRESPASS -STATE LAW</u>

116.     Plaintiff re-alleges paragraphs 1 through 115 and incorporates them into this count. Plaintiff asserts her claim against the Defendant Chicago Police Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

117.   The actions, omissions and conduct of Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

118.   Defendant Chicago Police Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to Plaintiff, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress.

119.   Defendant Chicago Police Officers, who occupied positions of special trust and authority, knew, had reason to know or believe that Plaintiff, was especially vulnerable and fragile.

120.   As a direct and proximate result of Defendant Chicago Police Officers' extreme and outrageous conduct, Plaintiff suffered and continues to suffer long-term, severe emotional distress and trauma.

121.   In the alternative, Defendant Chicago Police Officers owed Plaintiff a duty of care that they breached when they pointed guns at her. Plaintiff is a direct

victim of Defendant Chicago Police Officers' negligent infliction of emotional distress.

122.  Furthermore, the conduct of the Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

123.  The conduct of Defendant Chicago Police Officers in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context. Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

124.  Defendant Chicago Police Officers' actions was a proximate cause of Plaintiffs' injuries and her extreme, severe, long-term emotional distress and trauma.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – STATE LAW

125.  Plaintiff re-alleges paragraphs 1 through 124 and incorporates them into this count. Plaintiff asserts her claim against the Defendant Chicago Police Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

126.  The actions, omissions and conduct of Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

127.   Defendant Chicago Police Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to Plaintiff, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress.

128.   Defendant Chicago Police Officers, who occupied positions of special trust and authority, knew, had reason to know or believe that Plaintiff, was especially vulnerable and fragile.

129.   As a direct and proximate result of Defendant Chicago Police Officers' extreme and outrageous conduct, Plaintiff suffered and continues to suffer long-term, severe emotional distress and trauma.

130.   In the alternative, Defendant Chicago Police Officers owed Plaintiff a duty of care that they breached when they pointed guns at her. Plaintiff is a direct victim of Defendant Chicago Police Officers' negligent infliction of emotional distress.

131.   Furthermore, the conduct of the Defendant Chicago Police Officers was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property.

132.   The conduct of Defendant Chicago Police Officers in entering and executing a residential search warrant are generally associated with a risk of serious injuries. Numerous prior injuries have occurred to civilians in this context.

Defendant Chicago Police Officers failed to take reasonable precautions after having knowledge of impending danger to Plaintiff.

133.    Defendant Chicago Police Officers' actions was a proximate cause of Plaintiffs' injuries and her extreme, severe, long-term emotional distress and trauma.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – STATE LAW

134.    Plaintiff re-alleges paragraphs 1 through 133 and incorporates them into this count. Plaintiff asserts her claim against the Defendant Chicago Police Officers who entered and/or searched 164 N. Hermitage Avenue, 1st Floor Apartment.

135.    The actions, omissions and conduct of Defendant Chicago Police Officers set forth above were extreme and outrageous and exceeded all bounds of human decency.

136.    Defendant Chicago Police Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to Plaintiff, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress.

137.    Defendant Chicago Police Officers, who occupied positions of special trust and authority, knew, had reason to know or believe that Plaintiff, was especially vulnerable and fragile.

138.    As a direct and proximate result of Defendant Chicago Police Officers'
extreme and outrageous conduct, Plaintiff suffered and continues to suffer long-
term, severe emotional distress and trauma.

139.    In the alternative, Defendant Chicago Police Officers owed Plaintiff a
duty of care that they breached when they pointed guns at her. Plaintiff is a direct
victim of Defendant Chicago Police Officers' negligent infliction of emotional
distress.

140.    Furthermore, the conduct of the Defendant Chicago Police Officers was
willful and wanton and constituted a course of action which shows an actual or
deliberate intention to cause harm or which, if not intentional, shows an utter
indifference to or conscious disregard for the safety of others and/or their property.

141.    The conduct of Defendant Chicago Police Officers in entering and
executing a residential search warrant are generally associated with a risk of
serious injuries. Numerous prior injuries have occurred to civilians in this context.
Defendant Chicago Police Officers failed to take reasonable precautions after having
knowledge of impending danger to Plaintiff.

142.    Defendant Chicago Police Officers' actions was a proximate cause of
Plaintiffs' injuries and her extreme, severe, long-term emotional distress and
trauma.

## PRAYER FOR RELIEF (ALL COUNTS)

**WHEREFORE,** Plaintiff respectfully request that the Court enter judgment
in their favor and against the Defendants on each count for:

a) Compensatory damages;

b) Punitive damages;

c) Reasonable attorney's fees and litigation costs and expenses; and

d) Such other or further relief as the Court deems just and proper.


By:     /s/ *Keenan J. Saulter*

Attorney for Plaintiff


Keenan J. Saulter
**Saulter Law P.C.**
900 Ridge Road, Suite 200
P.O. Box 1475
Homewood, Illinois 60430
708.573.0060 Telephone
708.573.0061 Facsimile
kjs@saulterlaw.com


**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| ANJANETTE YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No.: 19-cv-05312 |
| ) | |
| THE CITY OF CHICAGO; CHICAGO ) | |
| POLICE OFFICERS ALAIN APORONGAO; ) | |
| ALEX J. WOLINSKI; and UNKNOWN ) | **Jury Trial Demanded** |
| CHICAGO POLICE OFFICERS, ) | |
| ) | |
| Defendants. ) | |

**<u>JURY DEMAND</u>**

Plaintiff demands trial by jury.

By: <u>/s/ *Keenan J. Saulter*</u>

Attorney for Plaintiff

Keenan J. Saulter
**Saulter Law P.C.**
900 Ridge Road, Suite 200
P.O. Box 1475
Homewood, Illinois 60430
708.573.0060 Telephone
708.573.0061 Facsimile
kjs@saulterlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document: **Plaintiff's First Amended Complaint at Law** was served on October 10, 2019, in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the District Court's system as to ECF filers.

By:   */s/ Keenan J. Saulter*

Attorney for Plaintiff