IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANJANETTE YOUNG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 19-cv-05312 |
| | ) | |
| THE CITY OF CHICAGO; CHICAGO POLICE | ) | Judge: Hon. John J. Tharp, Jr. |
| OFFICERS ALAIN APORONGAO, STAR NO. 4871; | ) | |
| ALEX WOLINSKI, STAR NO. 2605; | ) | |
| BRYAN MORDAN, STAR NO. 11437; | ) | |
| GABRIEL CRUZ, STAR NO. 2844; | ) | |
| MICHAEL ORTA, STAR NO. 11485; | ) | |
| JOSEPH LISCIANDRELLO, STAR NO. 119362; | ) | |
| MICHAEL DONNELLY, STAR NO. 13784; | ) | |
| TITO JIMENEZ, STAR NO. 14955; | ) | |
| FILIP BIENIASZ, STAR NO. 15454; | ) | |
| NIKOLA SARIC, STAR NO. 18200; | ) | |
| CODY MALONEY, STAR NO. 13032; | ) | |
| ERIC ACEVEDO, STAR NO. 13560; | ) | |
| OFFICER FRENCH, STAR NO. 15013; and | ) | |
| OFFICER VILLA, STAR NO. 14319, | ) | |
| | ) | |
| Defendants. | ) | |

**NON-PARTY CBS BROADCASTING INC.'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS'
<u>EMERGENCY MOTION FOR A PRIOR RESTRAINT ON SPEECH</u>**

**PRELIMINARY STATEMENT**

The Defendants (referenced herein as "the City") ask this Court for one of the most extraordinary forms of relief known in our jurisprudence – a prior restraint on a news report about a matter of public concern. A long and unbroken line of Supreme Court and federal appellate authorities prohibits such relief.

Moreover, the City claims that that it is entitled to such extraordinary relief because the broadcast would violate a protective order. But CBS is not a party to that order. And, in any

event, separate and apart from the law prohibiting prior restraints, another long line of settled case law – including the *Pentagon Papers* case – makes clear that a court may not punish (let alone restrain) a party from publishing, just because its source may have broken the law.

Finally, even putting these constitutional concerns aside, the City could not meet its daunting burden under the well-established test for obtaining preliminary injunctive relief. Indeed, because meaningful portions of the video at issue were already broadcast on WBBM Channel 2, any injunction would largely be ineffective and the Court should decline to restrain a news broadcast in such circumstances.

## ARGUMENT

### I.
### THE ORDER THE CITY SEEKS WOULD BE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH.

The temporary restraining order the City seeks is a classic prior restraint that violates the First Amendment to the United States Constitution. Such a prior restraint on speech constitutes "one of the most extraordinary remedies known to our jurisprudence" and is universally recognized to be "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 559, 559, 562 (1976). *See also Columbia Broad. Sys., Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1177 (9th Cir. 1984) ("the First Amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave").

Every prior restraint comes with "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). *See also New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (*per curiam*). Indeed, more than two hundred years of unbroken precedent establish a "virtually insurmountable barrier" against the issuance of just the

sort of prior restraint on a news organization that the City seeks here. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1979) (White, J., concurring).

In *Near v. Minnesota*, 283 U.S. 697, 716 (1931), for example, the Supreme Court first emphasized that a prior restraint may be imposed only in "exceptional cases" such as the intended publication of the sailing dates of military transports or the number and location of troops in time of war. In *New York Times Co. v. United States*, 403 U.S. at 723-24, the Court rejected the government's request to enjoin publication of the Pentagon Papers – even though they allegedly had been stolen by the source who provided them – despite government assertions that publication could impair national security. Because the dominant purpose of the First Amendment was to outlaw prior restraints, the Court imposed both a "heavy presumption against [their] constitutional validity" and "a heavy burden of showing justification for the imposition of such a restraint." *Id*. at 714 (internal marks and citations omitted). *See also, e.g., Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975) ("[t]he presumption against prior restraints is heavier – and the degree of protection broader – than that against limits on expression imposed by criminal penalties"); *In re Providence Journal Co*., 820 F.2d 1342, 1348 (1st Cir. 1986) ("[w]hen . . . the prior restraint impinges upon the right of the press to communicate news . . . the presumption of unconstitutionality is virtually insurmountable"), *modified on reh'g on other grounds*, 820 F.2d 1354 (1st Cir. 1987).

Applying these principles, one federal appellate court has explained that "'[p]rohibiting [publication] is the essence of censorship,' and is allowed only under exceptional circumstances." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (quoting *In re Providence Journal Co.*, 820 F.2d at 1345). "[P]ublication must threaten an interest more fundamental than the First Amendment itself" in order to justify a prior restraint.

*Id.* at 227; *see also In re Lifetime Cable*, No. 89-7046, 1990 WL 71961, at *1 (D.C. Cir. Apr. 6, 1990) (reversing temporary restraining order barring cable network's use of confidential video footage, and noting that, "[s]ince a prior restraint has an immediate and irreversible impact, any prior restraint bears a heavy presumption against its constitutional validity") (internal marks and citations omitted).

## II.
## THE ALLEGED VIOLATION OF A PROTECTIVE ORDER DOES NOT ENTITLE THE CITY TO RELIEF.

The City alleges that it can clear the virtually insurmountable barrier against prior restraints because, it contends, CBS's broadcast somehow violates a protective order. But CBS is not a party to that protective order, and the City does not allege otherwise. Instead, the City contends that *another party* violated the protective order and therefore that *CBS* can be enjoined from publishing the video at issue. As the *Pentagon Papers* case itself illustrates, the City is wrong. It has long been the law that a prior restraint is not appropriate even to suppress speech allegedly prohibited by criminal statutes. This distinction between "prior restraint" and "subsequent punishment" is based upon a "theory deeply etched in our law," that "a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them . . . beforehand." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. at 558-59; *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973) (the "special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment").

Thus, in *New York Times v. United States*, it was "seemingly uncontested . . . that the [Pentagon papers] . . . were purloined from the Government's possession and that the newspapers received them with knowledge that they had been feloniously acquired." 403 U.S. at

4

754 (Harlan, J., dissenting). Nonetheless, while several members of the six-Justice majority indicated, without deciding, that the newspapers might be subject to post-publication criminal prosecution under federal espionage laws, they emphasized that even unlawful conduct by an official leaking classified information could not justify the imposition of a prior restraint. *See id.* at 733 (White, J., concurring); *id.* at 730 (Stewart, J., concurring); *id.* at 747-48 (Marshall, J., concurring). *See also CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) ("Nor is the prior restraint doctrine inapplicable because the videotape was obtained through the 'calculated misdeeds' of CBS."); *Food Lion Inc. v. Capital Cities/ABC, Inc.*, 20 Media L. Rep. (BNA) 2263, 2264 (M.D.N.C. 1992) (refusing to enjoin news broadcast despite allegation that "Defendants secured the [hidden camera videotape] material in question unlawfully"). The City may not therefore invoke the extraordinary remedy of a prior restraint to suppress a news report, even were the newsgathering for it somehow unlawful.

Moreover, even if the City were trying to seek after-the-fact relief against CBS, the law is clear that the First Amendment protects publication of speech about a matter of public concern, even where it is based on the unlawful conduct of the source of information. *See Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001) (accepting that "that the interception was intentional, and therefore unlawful, and that, at a minimum, respondents 'had reason to know' that it was unlawful," but holding that a publisher's right to publish truthful information on matter of public concern is not affected by misconduct by third party that supplied information); *see also, e.g.*, *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (First Amendment protects newspaper that published information deemed confidential under state law, where source violated law in providing it); *Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 787 (3d Cir. 2005) (although police source "violated Pennsylvania law prohibiting the release of juvenile arrest

5

records" by providing them to newspaper, "his unlawful release of the information does not make receipt of that information by the Herald Standard unlawful"); *O'Donnell v. CBS, Inc.*, 782 F.2d 1414, 1420 (7th Cir. 1986) (CBS's receipt of stolen documents was not tortious where there was "no evidence in the record that CBS in any way 'induced' the alleged intrusion into [plaintiff's] credenza" by his secretary); *Republic of Kazakhstan v. Doe*, 15 Civ. 1900 (ER), 2015 U.S. Dist. LEXIS 145848, at *7-8 (S.D.N.Y. Oct. 27, 2015) (refusing to enjoin publisher's online posting of hacked documents because the First Amendment "protects the publication of the [stolen] documents by anyone other than those directly involved with their purported theft").

Because the order the City seeks would be a patently unconstitutional prior restraint on speech at the core of the First Amendment, and because a third party's alleged violation of a protective order is clearly insufficient to justify such relief, its application should be denied.

### III.
### THE CITY CANNOT SATISFY ITS BURDEN OF PROVING ITS ENTITLEMENT TO A TEMPORARY RESTRAINING ORDER IN ANY EVENT.

Even putting the weighty First Amendment issues aside, any TRO is a drastic remedy. And the City has fallen woefully short of meeting its burden for obtaining such relief.

First, for the reasons set forth in Part II above, the City has no likelihood of success on the merits. It cannot establish that CBS's speech would justify even after-the-fact liability let alone justify a prior restraint on speech.

Second, the City cannot demonstrate irreparable injury. Its theory appears to be that it needs a prior restraint on speech because later relief cannot "unring the bell." However, that claim is without merit where, as here, meaningful portions of the video have already been released, including in this evening's 6:00 p.m. broadcast. Thus, the requested injunction would be ineffective and there is no irreparable injury to prevent. Indeed, courts routinely decline to issue injunctions against publication where, as here, the "cat is out of the bag," and an injunction

6

would be ineffective in preventing the harm asserted. *See, e.g.*, *United States v. Quattrone*, 402 F.3d 304, 312 (2d Cir. 2005) (Sotomayor, J.) (district court improperly enjoined news media from publishing juror names during pendency of trial where names were read in open court and "any member of the public could have learned the jurors' names and disseminated that information as widely as possible"); *Republic of Kazakhstan v. Doe*, 2015 U.S. Dist. LEXIS 145848, at *7-8 (declining to enjoin publication of stolen emails where emails were "already publicly available"); *Bank Julius Baer & Co. v. Wikileaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (declining to enjoin continued publication of confidential documents published by Wikileaks where "there [wa]s evidence in the record that 'the cat is out of the bag,'" and the requested injunction would, therefore, not "serve its intended purpose"); *Marcy Playground, Inc. v. Capitol Records*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) (declining to enjoin further distribution of album that improperly failed to credit plaintiff where it had already been distributed and "a preliminary injunction here would be very much like locking the barn door after the horse is gone").

Third, the balance of the equities strongly favors CBS. Here, the City is asking the Court to protect it from unflattering information, significant aspects of which have already been aired, asserting that its interests somehow justify restraining CBS's fundamental right to report about matters of public concern. *See, e.g., Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("[n]o prior decisions support the claim that the interest of an individual in being free from public criticism . . . warrants use of the injunctive power of a court."). This factor tilts strongly in favor of CBS as well. Indeed, the principal purpose of a temporary restraining order is to preserve the status quo. "Where the freedom of the press is concerned, . . . the status quo is to 'publish news promptly that editors decide to publish. A restraining order *disturbs* the status

7

quo and impinges on the exercise of editorial discretion.'" *Procter & Gamble Co.*, 78 F.3d at 226 (citation omitted; emphasis added). "Rather than having no effect, 'a prior restraint, by . . . definition, has an immediate and irreversible sanction'" on the media defendant. *Id.* (citations omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment") (citations omitted); *Quattrone*, 402 F.3d at 310 (a "prior restraint is not constitutionally inoffensive merely because it is temporary").

Finally, the public has an interest in the free flow of information about the government that acts in their name. That interest would be severely curtailed in this case – and chilled in others – by the issuance of a prior restraint. "This factor weighs heavily in favor of denying the plaintiff's motion. The public interest lies with the unfettered ability . . . to report" information to the public. *Religious Tech. Ctr. v. Lerma*, 897 F. Supp. 260, 267 (E.D. Va. 1995) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572-73 (1980)); *see also Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) ("the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of . . . speech, press, and political freedom").

## CONCLUSION

For all the foregoing reasons, the City's request for a prior restraint on speech should be denied.

Dated: December 14, 2020

Respectfully submitted,

*/s/ Brian A. Sher*
Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

*Counsel for Non-Party CBS Broadcasting Inc. (d/b/a CBS2 Chicago)*

Of Counsel:
Jay Ward Brown
Seth D. Berlin
Kaitlin Gurney
Maxwell S. Mishkin
BALLARD SPAHR LLP
1909 K Street, N.W. 12th Floor
Washington, D.C. 20006