```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3    ANJANETTE YOUNG,                    )
                                         )
 4                      Plaintiff,       )
      -vs-                               )  Case No. 19 C 5312
 5                                       )
      CITY OF CHICAGO, et al.,           )  Chicago, Illinois
 6                                       )  December 22, 2020
                        Defendants.      )  11:00 a.m.
 7

 8              TELEPHONIC TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN J. THARP, JR.
 9
      APPEARANCES:
10    For the Plaintiff:      SAULTER LAW P.C., by:
                              MR. KEENAN J. SAULTER
11                            900 Ridge Road, 3SE
                              P.O. Box 1475
12                            Homewood, IL 60430

13    For the Defendants:     CITY OF CHICAGO, DEPARTMENT OF LAW, by:
                              MR. MARQUES ALAN BERRINGTON
14                            MS. CAROLINE FRONCZAK
                              MS. JESSICA L. GRIFF
15                            MS. CELIA MEZA
                              2 N. Lasalle Street
16                            Suite 420
                              Chicago, IL 60602
17    For Respondent
      Saulter:                SANDBERG LAW OFFICE, P.C., by:
18                            MR. CRAIG M. SANDBERG
                              P.O. Box 182
19                            Deerfield, IL 60015

20                            LAW OFFICES OF RAHSAAN A. GORDON, by:
                              MR. RAHSAAN A. GORDON
21                            33 North Dearborn Street, Suite 300
                              Chicago, IL 60602
22
      Court Reporter:         KELLY M. FITZGERALD, CSR, RMR, CRR
23                            Official Court Reporter
                              United States District Court
24                            219 South Dearborn Street, Room 1420
                              Chicago, Illinois  60604
25                            Telephone:  (312) 818-6626
                              kmftranscripts@gmail.com
```

1        (Proceedings heard via telephone:)

2            THE COURT:  We're calling the case of Young v. The

3    City of Chicago, 19 CV 5312.

4            Do we have counsel for the plaintiff on the line?

5            Is Mr. Saulter on the line?

6            MR. SANDBERG:  Yes, Judge.  This is Craig Sandberg.

7    I know Keenan is trying to get in.

8            THE COURT:  All right.  We'll circle back.

9            Mr. Sandberg?

10            MR. SANDBERG:  Yes.

11            THE COURT:  You represent who?

12            MR. SANDBERG:  I represent Mr. Saulter.

13            THE COURT:  Okay.  Do you have any other

14    colleagues --

15        (Indiscernible crosstalk.)

16            THE COURT:  Do you have any other colleagues on the

17    line?

18            MR. SANDBERG:  Rahsaan Gordon --

19            MR. GORDON:  Yes.

20            MR. SANDBERG:  -- is going to be joining us.

21            MR. GORDON:  Yes.  Yes.  Yes, Judge.  I'm Rahsaan

22    Gordon also -- I filed an appearance on behalf of Attorney

23    Saulter as well.

24            I know he was trying to log in through the --

25            MR. SAULTER:  Good morning, Your Honor.  I'm here.

1    This is Keenan Saulter.  The system just called me.

2         THE COURT:  Okay.

3         MR. SAULTER:  I've been logged in since 10:45.

4         THE COURT:  All right.  So we have Mr. Saulter for

5    the plaintiff; Mr. Sandberg and Mr. Gordon for Mr. Saulter.

6         Do we have counsel for any of the defendants on the

7    line?

8         MS. FRONCZAK:  Yes, Your Honor.  For the City of

9    Chicago, this is Caroline Fronczak.

10        MR. BERRINGTON:  Yes, Your Honor.  Marques Berrington

11   for the City as well.

12        MS. GRIFF:  And, Your Honor, Jessica Griff,

13   G-r-i-f-f, for the individual defendant officers.

14        THE COURT:  All right.

15        Any other counsel representing any other parties on

16   the line?

17        MS. MEZA:  Your Honor, this is Celia Meza, Acting

18   Corporation Counsel, on behalf -- appearing as well on behalf

19   of the City of Chicago.

20        THE COURT:  All right.  Good morning.

21        MS. MEZA:  Good morning, Your Honor.

22        THE COURT:  Any other counsel for any of the parties?

23        All right.  This hearing arises from a series of

24   events last week that began with the City filing a motion to

25   enjoin a news broadcast because that broadcast was believed

1  to -- it was believed that that broadcast would involve

2  publication of video recording in the City's control relating

3  to the events that were the basis for the claims asserted by

4  the plaintiff in this case.

5       The City had produced that video in discovery and

6  pursuant to an agreed confidentiality and protection order

7  that is entered by the Court.

8       I will note here that I'm going to refer, for

9  simplicity sake, to a video in the singular, though it is my

10  understanding based on news reports that there were -- there

11  may have been multiple video recordings produced by the

12  defendants and that in the past week the City has located

13  additional recordings that may have been -- that perhaps

14  should have been produced but were not.

15       In addition to seeking to enjoin the use of the video

16  in the news broadcast, the City's original motion also sought

17  sanctions for the disclosure of the video in violation of the

18  protective order.

19       The City subsequently moved to withdraw its motion

20  for sanctions; and I granted that motion, but I kept this

21  hearing date on the schedule because the Court has its own

22  interest in assuring that litigants comply with its orders.

23  Without compliance with court orders, courts cannot provide

24  justice for anyone, much less justice for everyone.

25       The City's filings represent that the City has not

1   released the video through any legal process before the

2   broadcast.  The premise of the City's submission was that the

3   source of the video provided to the television network was

4   therefore Mr. Saulter, to whom the video had been provided in

5   discovery.

6          That is what brings us to this hearing.  The Court is

7   giving consideration to issuing a rule to show cause why

8   Mr. Saulter should not be held in contempt.  But before going

9   down that path, I wanted to give Mr. Saulter an opportunity to

10  address any of these issues and to provide any arguments he

11  may have as to why this is or is not the appropriate course of

12  action here.

13         Before I --

14         MR. SAULTER:  Thank --

15         THE COURT:  Almost.

16         Before we get to that, I also want to make clear that

17  the person -- purpose, excuse me -- is not to litigate or

18  argue the merits of the claim the plaintiff has asserted in

19  this lawsuit.  There is no claim pending in this court or in

20  any other court to my knowledge concerning the underlying

21  events.  The plaintiff dismissed her claim in this court

22  voluntarily after receiving production of the video through

23  court-ordered discovery.

24         We are here because the protective order governing

25  that discovery bars disclosure of that information to most

1   third parties, and that protective order continues to apply

2   even after the dismissal of the case. And that order requires

3   the confidential information produced in discovery be returned

4   to the producing party after dismissal of the litigation and

5   further provides that the order remains in force and effect

6   after a dismissal of the case.

7           So with that, I'll hear from Mr. Saulter or his

8   counsel if you wish to address any of these issues at present.

9           MR. SAULTER: I do, Your Honor. This is Mr. Saulter.

10  Good morning.

11          Judge Tharp, I come before you this morning

12  transparently to admit that, yes, I did release the 14

13  body-worn camera videos that were tendered to me in discovery

14  by the defendant, the City of Chicago, which depicted my

15  client, Anjanette Young's body and home during the raid at her

16  home on February 21st of 2019.

17          I want you to know that I have the greatest respect

18  for this Court, the various judges of this Court that I have

19  had the privilege to practice before, and now that I've had

20  the benefit of having the eight-page transcript from our

21  February 7, 2020 hearing that I read for the first time last

22  week when it was ordered by the City, I understand that I

23  should have handled this situation differently.

24          I am truly sorry for my actions in releasing these

25  videos to the media. I know that it is a privilege to

1   practice before this Court, and I do not take that privilege

2   for granted, nor do I take the orders and directives of

3   Your Honor or any judge lightly.

4         After this Court granted my motion to voluntarily

5   dismiss my client's case on March 10th of 2020, it was my

6   intention to file -- refile this action relatively soon

7   thereafter in the Circuit Court of Cook County.  However, as

8   this Court is aware, that was nearly the exact time that the

9   State of Illinois, many of our law practices, and our court

10  systems made significant adjustments to deal with the onset

11  and consequences of the COVID-19 global pandemic.

12        Before I made the decision to release the videos, I

13  did go back and review the protective order that this Court

14  entered on February 20th of 2020; but I did not have the

15  eight-page transcript, and I was not able to recall with

16  specificity the entire discussion that this Court and the

17  parties had during the presentment of the defendants' motion

18  to dismiss on February 7th of 2020.

19        Regardless of why I made the decision to release the

20  videos to CBS 2, I know my decision was the wrong one.  I

21  should have come back before this Court and sought a

22  modification of the protective order that this Court entered

23  on February 21, 2020.

24        Again, Judge Tharp, I truly apologize to you.  I ask

25  that you forgive my lapse in judgment, and I thank you for

1     your consideration of these issues.

2           THE COURT:  All right.  I appreciate your candor,

3     Mr. Saulter.

4           Is there any -- counsel for any of the defendants or

5     the City wish to address any of the issues here?

6           MS. FRONCZAK:  Judge, this is Caroline Fronczak.  We

7     don't have any statements beyond what we've already filed.

8           MS. MEZA:  Your Honor, this is Celia Meza, Acting

9     Corporation Counsel on behalf of the City of Chicago.  And it

10    is the City's position, however, Ms. Fronczak is correct.  We

11    have no comments with regard to the actual litigation matters.

12    But we do understand and hear Mr. Saulter's apology to this

13    Court, and we would urge this Court to take that into

14    consideration, and, in fact, not impose any sanctions against

15    Mr. Saulter at this time.

16          THE COURT:  All right.

17          I guess, Mr. Saulter, while I understand -- while I

18    appreciate your candor, what I don't understand is how having

19    actually gone back to the protective order and reviewed it

20    before disclosing this information, you could have been

21    under -- operating under any understanding of the protective

22    order that would have suggested that it was appropriate to

23    disclose this video to -- outside of the parameters set forth

24    in the order.  Could you elaborate on that?

25          MR. SAULTER:  Your -- I will elaborate on it,

1   Your Honor; and I would also ask, if the Court would allow --

2   I have retained counsel in relation to these issues.  I have

3   done that because I respect the seriousness of the nature of

4   these proceedings.  So I want to address your question

5   briefly; and if the Court would grant me the privilege, I

6   would ask my counsel, Mr. Craig Sandberg, to further elaborate

7   on the issue, the question that you asked.

8           THE COURT:  Certainly.  I'll hear you first.

9           MR. SAULTER:  Okay.

10          Your Honor, after going back and reviewing the

11  protective order, the City, in one of their filings last week,

12  indicated that they thought I should be given the benefit of

13  the doubt because the case was -- had been dismissed.  I

14  understand that the protective order lives on beyond the

15  dismissal of the case, but I do think that is -- was a

16  consideration that I made.

17          Further -- and this is where I'm going to defer to

18  Mr. Sandberg to give you the specifics.  But I think there is

19  a reasonable argument to be made that these videos should have

20  been provided to Ms. Young last November when she filed a FOIA

21  request on November 1st of 2019.  After having the benefit of

22  reading the transcript, I did make that argument on

23  February 7th before Your Honor.  Your Honor seemed to somewhat

24  agree that these videos should have been turned over pursuant

25  to FOIA.  Now the City seems to agree that the videos should

1    have been turned over via FOIA.

2         Those things did come into play in my thinking.  I

3    still understand the proper course of action would have been

4    to come back before Your Honor, file a motion advising the

5    Court that I thought the City had improperly designated these

6    videos as confidential, that the City should have turned these

7    videos over via FOIA and sought the ability to use these

8    videos from the Court as if they had been properly turned over

9    via FOIA.  I made a significant mistake.

10        I would ask my counsel, Mr. Sandberg, to speak

11   further to these issues.

12        THE COURT:  All right.

13        Mr. Sandberg.

14        MR. SANDBERG:  Yes, Your Honor.  This is Craig

15   Sandberg.

16        And certainly I can get into some of the nuances

17   here, but I would also be happy to provide this Court with a

18   formal response in a memorandum if that's something that the

19   Court wants.

20        A couple of things that are important here, and I

21   think Mr. Saulter highlighted them, is that from a timing

22   standpoint, the case was filed, and then Ms. Young

23   independently had FOIA'd the City for the video of her in her

24   home.

25        I think the original complaint was filed on

1    August 16, 2019. November 1st is when Ms. Young made her

2    request. I think it was shortly thereafter, within three

3    weeks or so, that the City denied her that request and said

4    she wasn't entitled to get those videos.

5         So I think that that's an important consideration

6    because a number of the statutes that are involved in this

7    include FOIA as well as the Body Cam Act, formally known as

8    the Illinois Law Enforcement Officer-Worn Body Camera Act.

9         Those particular statutes interact with each other.

10   And, in fact, the Illinois Attorney General has spoken to this

11   specifically in what's been referred to as the Public Access

12   Opinion 19-001, and it's dated January 9th of 2019. And in

13   that, the Attorney General says, "The more reasonable,

14   harmonious construction of Section 10-20(b)(3) of the Body

15   Camera Act is that both a subject of the recording and the

16   officer and their legal representatives may obtain the

17   recording in accordance with FOIA, regardless of whether or

18   why it's been flagged."

19         One of the important dovetails into the protective

20   order that the Court entered on -- or that's dated

21   February 20th. It's Section 18 of that which talks about the

22   public disclosure of documents designated confidential. That

23   section of this order prohibits "...the disclosure of any

24   document designated as a 'confidential' subject to the

25   limitations of Section 5(b). Any party or counsel seeking to

1    use or disclose confidential information for any reason other

2    than for purposes of this litigation, including for public

3    disclosure, will not use the documents designated as

4    'confidential' but shall instead comply with the requirements

5    set forth under the Illinois Freedom of Information Act to

6    obtain the desired documents from the proper public body."

7         In the context here, that is something that Ms. Young

8    already had done, and the City had -- based on the reporting

9    and -- as well as the statements from Mayor Lightfoot, they

10   wrongfully denied that.  And so there's a lot of intersections

11   of various controlling laws.

12        Portions of this Court's order, some of the important

13   things related to what items are properly deemed confidential

14   are found in Section 2, which sets forth categories (a)

15   through (h).  One of the important things is subsection (a)

16   which says information protected from disclosure by statute.

17   That's the way the Court's form order reads.  However, the

18   City modified that to include the language including the

19   Illinois Freedom of Information Act.

20        So the FOIA and the Body Camera Act as well as the

21   interpretation from the Attorney General would have permitted

22   this.  I'm understanding Mr. Saulter's position then, the

23   initial position taken by the City on this, is that they were

24   properly denied to Ms. Young, said she was never going to get

25   them via FOIA.  And I think that that would have held true up

1   until recently when the mayor said that she would have been

2   entitled to that.  So I think that Mr. Saulter, by reviewing

3   the court order, not having the benefit of the transcript --

4   which I have reviewed the transcript as well, and the Court

5   allowed this limited discovery with the entry of the

6   confidential order and specifically had indicated that the

7   videos were to be considered confidential.  However, I think

8   Mr. Saulter has demonstrated that in good faith he was relying

9   upon the language and the possible constructions, innocent

10  otherwise, of the protective order that would have allowed it.

11       And, again, Your Honor, there is -- there's a lot of

12  other things that could be added in support of the lawful

13  position here, and I would be happy to formalize that and

14  prepare -- whatever you want to call it -- a response or

15  memorandum for Your Honor's benefit as something that you

16  could look to.

17       THE COURT:  All right.  I think that's how we're

18  going to proceed because I think, No. 1, I have never been

19  presented with any of the materials that you've referenced,

20  Mr. Sandberg.

21       MR. SANDBERG:  Sure.

22       THE COURT:  So I do want to give full consideration

23  to those.

24       But I do also -- I want to test my understanding of

25  your comments here, but I don't -- and I would ask that your

1    written response be very clear on this point.  But

2    notwithstanding the arguments that plaintiff may have had

3    under Illinois law that she was entitled to this material

4    under FOIA, the Illinois FOIA, that is in significant measure

5    really immaterial to the question of compliance with the terms

6    and conditions of the protective order.

7           The entire premise of the protective order was that

8    the City didn't want any discovery to go forward, and I

9    ordered them to provide the discovery, the video recording

10   materials, but, you know, this is federal court, not state

11   court.  The issues of, you know, FOIA com- -- the state's FOIA

12   compliance are not before this Court.  What was before this

13   Court was the proper conduct of discovery in the federal

14   lawsuit, and that's what the Court's protective order was

15   designed and intended to achieve.

16          And I'm still somewhat at a loss, but I'm -- and

17   that's why I want -- I do want to have a written response here

18   so that I can fully consider your arguments.  But I'm still

19   somewhat at a loss as to understand how an experienced lawyer

20   like Mr. Saulter could, upon review of this order, conclude

21   that it was appropriate or proper to disclose these video

22   recordings to a news agency or any third party that was not

23   authorized to receive them under the terms and conditions of

24   the order.

25          So there seems to me to still be a fundamental

1    disconnect there, but it may be that looking further at these

2    materials that you've referenced here or -- and putting your

3    argument in writing will give me an opportunity to further

4    reflect on that.

5          So I'm not prejudging that, but I want to make sure

6    that you address that concern because that is the Court's

7    central concern here, is how one could have any doubt about

8    the propriety of that action, particularly having gone back

9    and understood that the protective order was still in force

10   and in place, as Mr. Saulter has acknowledged that he did

11   understand.  So that's really the core issue here that I want

12   to have addressed.

13         MR. SANDBERG:  Sure.  I understand that, Your Honor.

14         THE COURT:  How long --

15         MR. SANDBERG:  I appreciate that, and I was trying to

16   dovetail that information, the context of the protective

17   order.

18         How much time do I need, Your Honor?

19         THE CLERK:  Hello?

20         THE COURT:  Yes.

21    (Brief interruption.)

22         THE COURT:  Ms. Rone?

23         Hold on.  Ms. Rone, did you have a question?

24         THE CLERK:  I'm sorry.  It was for someone else that

25   was calling in for the hearing.  I'm sorry.

1          THE COURT:  All right.  You need to be on mute.

2          I'm sorry, Mr. Sandberg.

3          MR. SANDBERG:  That's okay, Judge.  I appreciate it.

4          THE COURT:  How long do you need?

5          MR. SANDBERG:  Given this moment in the year, I'll

6    take as much time as Your Honor can give me.  However, I -- in

7    order for this Court to address things as expeditiously as

8    possible, I'm also happy to dedicate all my resources and time

9    to put something together as promptly as you need it.

10          THE COURT:  All right.  While I appreciate that, I

11   don't think it's necessary to disrupt anyone's holiday plans,

12   to the extent that anybody has any holiday plans this year.

13          MR. GORDON:  Judge, I'm sorry to interrupt.  This is

14   co-counsel.  This is Rahsaan Gordon.

15          I just wanted to add, and I heard Your Honor say that

16   Attorney Saulter, that he said that he appreciated the fact

17   that the protective order was still in force after the case

18   was voluntarily dismissed.  I'm not exactly sure that he fully

19   appreciated the fact that the protective order was still in

20   place.  He's clear now.

21          And so I think the combination of both that fact,

22   which is what he alluded to that the City mentioned in its

23   motion to withdraw its original motion for sanctions, and then

24   also with his read of the protective order, those two things.

25          And so I believe that Attorney Saulter's read of the

1  protective order was that it was vague on the issue of the

2  video simply because it was not included in the actual

3  protective order, that that video was not specified, and

4  his --

5          THE COURT:  All right.  Mr. Gordon?

6          MR. GORDON:  Yes.

7          THE COURT:  I'm going to -- I'm going to ask you to

8  confer with your counsel and your -- or your co-counsel and

9  your client in regard to those issues, and you can present

10 that position, if that is your position, in your written

11 submission --

12         MR. GORDON:  Thank you, Judge.

13         MR. SANDBERG:  Thank you, Your Honor.

14         THE COURT:  -- rather than scrolling back here to

15 quote Mr. Saulter.

16         MR. SAULTER:  Your Honor, this is Mr. Saulter.

17         THE COURT:  Mr. Sandberg -- yes.

18         MR. SAULTER:  Your Honor, I apologize.  This is

19 Mr. Saulter.

20         Putting on my lawyer hat now and not as a client,

21 what -- I guess I do want to have an understanding of the

22 options the Court is considering as it relates to actions that

23 it might take against me -- I know you're not prejudging the

24 issues -- simply because I want to understand the posture that

25 we should approach our response in, and, quite frankly, the

1  type of jeopardy that I'm facing to ensure that I'm responding

2  properly.

3          THE COURT:  That's fair enough.

4          What has been offered, and I will accept the offer of

5  your counsel, is to further elucidate the position that's been

6  taken with respect to what's acknowledged to be a breach of

7  the -- of the confidentiality order but an explanation for

8  that breach.

9          I think in the context of this then, it would be a

10  filing for a show cause of why you should not be held in

11  contempt based on that acknowledged breach.  And there may be

12  equitable reasons.  There may be legal reasons.  There may be

13  factual reasons that that should not be the case.  But, you

14  know, ultimately the issue is whether that conduct should be

15  subject to a sanction, and if so, what sanction would be

16  appropriate.  And I think that's the tenor of the submission

17  that should be made.

18          Mr. Sandberg --

19          MR. SAULTER:  And to -- I apologize.

20          THE COURT:  Mr. Sandberg --

21          MR. SAULTER:  Your Honor, I apologize.  This is

22  Mr. Saulter.  Your Honor, this is Mr. Saulter.

23          THE COURT:  Go ahead.

24          MR. SAULTER:  I do have a question regarding what you

25  just said.  I do not mean to cut you off.  I can't -- don't

1    have the benefit of seeing you.

2         THE COURT:  No.  It's difficult on the phone.  I

3    understand.

4         MR. SAULTER:  Yeah.

5         THE COURT:  Go ahead.

6         MR. SAULTER:  Again, I'm clarifying my legal position

7    here.  Am I right to understand that the Court is not

8    considering -- that the Court is -- will be considering

9    contempt in a civil context only?

10        THE COURT:  There's a lot of case law on the

11   distinction between civil and criminal contempt.

12        MR. SAULTER:  Yes, sir.

13        THE COURT:  What I can tell you is that the Court's

14   concern is not compensation to the City.  The Court's concern

15   is vindication of its -- and its own interest institutionally

16   with the enforcement -- compliance with and enforcement of its

17   orders.

18        So I think you and Mr. Sandberg and Mr. Gordon need

19   to confer obviously, but what I'm interested in here -- and as

20   I've said, I appreciate your candor, and that counts a great

21   deal with the Court.  But I am still left with the fundamental

22   question about how an experienced lawyer who was involved in

23   the discussion in court about the -- that led to the proposed

24   protective order and the entry of that protective order could

25   have concluded that disclosure of those videos was either

1    permitted by or not barred by the terms of the protective

2    order.  Maybe there's an argument that I'm not understanding

3    there, but that's the crux of my concern.  And if the

4    answer -- well, if the answer is he was confused and we

5    thought we were entitled to it under state law, that doesn't

6    do a whole lot to ameliorate my concern.  But maybe I'm

7    misunderstanding the argument, or maybe there's more to the

8    argument that you can articulate, but that, again, is the crux

9    of my concern.  That's what I would like to see addressed.

10        You -- I think as a matter of process, this should be

11   styled as a -- an order to show cause why you should not be

12   held in contempt.  Contempt can be civil or criminal.  Again,

13   I think the case law on that acknowledges --

14        MR. SAULTER:  Your Honor --

15        THE COURT:  -- that there is some --

16        MR. SAULTER:  Your Honor, I got kicked out.

17        THE COURT:  -- significant overlap.

18        I'm sorry.

19        MR. SAULTER:  Your Honor, I'm sorry.  This is

20   Mr. Saulter.  I got kicked out for approximately 45 seconds.

21   I'm back in.  So you probably said something -- you absolutely

22   said something I needed to hear, but my counsel is here.  I'm

23   going to just --

24        UNIDENTIFIED SPEAKER:  You here?

25        MR. SAULTER:  Yeah, I don't know what I missed

1    though.  I don't know how I got kicked out.  I'm so sorry.

2          THE COURT:  Okay.  Well, Mr. Sandberg and Mr. Gordon

3    have, I take it, heard -- have the benefit of my comments.

4    You can certainly get a transcript of my comments as well.

5       (Indiscernible crosstalk.)

6          MR. SANDBERG:  Yes, Your Honor.  This is Craig

7    Sandberg.  I indicated that --

8          THE COURT:  Getting back, Mr. Sandberg, to the

9    schedule.  Again, I'm flexible based on your schedule, but why

10   don't we say January 8th?

11         MR. SANDBERG:  Okay.

12         THE COURT:  Does that give you adequate time?

13         MR. SANDBERG:  That does.  I appreciate that,

14   Your Honor.

15         THE COURT:  All right.

16         MR. SANDBERG:  I do -- I would hope perhaps

17   Your Honor can -- you've raised briefly -- and I'm well aware

18   of the distinction between civil and criminal contempt as well

19   as direct and indirect criminal contempt.  And so -- but I do

20   think, for purposes of being able to provide a response that

21   will be from me, as well as Mr. Gordon will be including

22   arguments as well, that we have some understanding as to what

23   specifically the Court is considering.

24         THE COURT:  Well, I'm not considering -- other than

25   understanding that a court order has been violated, I don't

1    have the facts and circumstances necessary at this point to

2    know what I think is the appropriate sanction.  I think as a

3    general question, contempt is obviously a potential sanction

4    that could be imposed.  There may be other grounds or bases

5    for a sanction that could be offered or considered by the

6    Court, but I think that what that's going to turn on is

7    basically the explanation that Mr. Saulter provides for this

8    series of events that led to the disclosure of this video in

9    violation of the Court's order.

10           MR. SANDBERG:  Okay.

11           THE COURT:  That's what I want to fully understand.

12   So, you know --

13           MR. SANDBERG:  Okay.  Thanks, Your Honor.  I --

14           THE COURT:  -- let's do this.  It's not my intention

15   to box anyone or certainly deny anyone adequate process here.

16           And -- so consistent with the purpose of this call,

17   as I said at the outset, I'm considering whether to pursue a

18   rule to show cause.  We had a dialogue here.  Let's leave it

19   at that.  If -- you are free to provide as much or as little

20   explanation in your written submission as you wish to pursue.

21   I've told you what my concerns are.

22           MR. SANDBERG:  Right.

23           THE COURT:  We won't treat this as a response to a

24   show cause order.  This will simply be a continuation of the

25   remarks of Mr. Saulter to the extent that you wish to

1   elaborate on them at all.  And I will take into account

2   whatever you submit in writing to supplement this hearing in

3   deciding whether I want to issue a rule to show cause.

4        So, again, it's not my intention to require

5   Mr. Saulter to say anything at all, as I think I indicated at

6   the outset here, but this is an opportunity, perhaps more

7   informally, to address these concerns and bring -- it may be

8   that a rule to show cause is not necessary here, if there is

9   information that -- or argument that you want to make to

10  suggest that it's not.

11       I realize that's -- you know, there's some overlap

12  there, but I'm trying not to jump to any conclusions or reach

13  any determinations about what's appropriate here without

14  hearing from Mr. Saulter and/or his counsel as to the Court's

15  consideration of whether, you know, a contempt proceeding is

16  appropriate.  It may be your view that it is not appropriate

17  because, you know, Mr. Saulter's conduct was unintentional.

18  If there turn out to be fact issues or something like that

19  that we need to have a hearing on, maybe we have a contempt --

20  a rule to show cause process that we institute at that point.

21       So we'll leave it -- I'm going to leave it at that.

22  You can file by January 8th any response that you want.  I'm

23  not going to treat it as a show cause hearing.  I'm not going

24  to make a ruling based on that hearing -- or that submission.

25  What I may do is factor in what we've discussed on the phone

1  today with whatever information additionally you supply in

2  writing, and I will make a determination of whether I think a

3  rule to show cause is necessary to issue, and if so, on what

4  basis.

5          Is that clear enough?

6          MR. SAULTER:  It is very clear, Your Honor.  This is

7  Mr. Saulter.  It's very clear to myself and my counsel.  I

8  truly appreciate your careful consideration to these issues.

9  I appreciate the opportunity to speak on my own behalf here

10  and explain my thought process.  I express again my apology to

11  Your Honor for my actions.  We will further address these

12  issues in writing, and we wish yourself and everyone on the

13  call happy holidays.

14          THE COURT:  All right.

15          MR. SANDBERG:  Judge Tharp, this is Craig Sandberg --

16          THE COURT:  (Indiscernible.)

17          MR. SANDBERG:  Judge Tharp, this is Craig Sandberg.

18  I just want to appreciate -- let you know I appreciate the

19  opportunity to formalize the response that I was trying to

20  elucidate on the phone today, and I will have that filed

21  before January 8th.

22          THE COURT:  That's all right.  Okay.

23          MS. MEZA:  Your Honor --

24          THE COURT:  All right.

25          Anything else?

1        MS. MEZA:  Your Honor, if I could, this is Celia

2  Meza, Acting Corporation Counsel.

3        THE COURT:  Yes.

4        MS. MEZA:  Just for clarification of the record and

5  expectations of the Court, the City will not be filing a

6  response to the brief that Mr. Saulter's counsel will be

7  filing on January 8, correct?  You're not expecting anything

8  from the City?

9        THE COURT:  I am not.

10        MS. MEZA:  Thank you, Your Honor.

11        THE COURT:  Okay.

12        All right.  Then I think that covers what I wanted to

13  cover here today.

14        Anything else from Mr. Saulter or his counsel?

15        MR. SAULTER:  No, Your Honor.

16        MR. SANDBERG:  No, Judge.  Thank you very much.

17        THE COURT:  Then we're adjourned.  I will take into

18  consideration the written submission and issue a further order

19  as I deem appropriate.

20        All right.  Thank you.

21        MULTIPLE COUNSEL:  Thank you.

22        THE COURT:  We're adjourned.

23    (Which were all of the proceedings heard.)

24

25

1              C E R T I F I C A T E

2          I certify that the foregoing is a correct transcript,

3      to the extent possible, of the record of proceedings in the

4      above-entitled matter given the limitations of conducting

5      proceedings via telephone.

6

7      /s/ KELLY M. FITZGERALD                    December 30, 2020
       KELLY M. FITZGERALD, CSR, RMR, CRR
8      Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25